MICHAEL FAILLACE & ASSOCIATES, P.C.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
:
TOSAN BOB OKOTIE                                                  :
:
                  Plaintiff,          :
:
    -against-                                                 :      **COMPLAINT**
:
                                       :      **ECF Case**
:
NYC DEPARTMENT OF HOMELESS SERVICES:      **JURY TRIAL REQUESTED**
:
:
                 Defendant.          :
:
-----------------------------------------------------------------X

Plaintiff TOSAN BOB OKOTIE, by his attorney, Michael Faillace & Associates, P.C., alleges upon knowledge as to himself and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

**1.** This is an employment discrimination action brought by Plaintiff TOSAN BOB OKOTIE to recover damages against the NYC Department of Homeless Services ("DHS") for violation of his rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"), Title VII – National Origin, the New York State Executive Law, §290 *et seq*. (the "Human Rights Law"), the New York State Executive Law Article 15, New York City Human Rights Law, N.Y.C.A.C. §§ 8-101 et seq.§§ 291 *et seq.,* Civil Rights Act of 1866, 42 U.S.C. § 1981 Civil Rights Act of 1964, 42 U.S.C. §§ 2000e and the Administrative Code of the City of New York, §8-107 *et seq*. (the "City  Law").

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343 and § 7(b) of the ADEA, 29 U.S.C. § 626(c)(1) . Supplemental jurisdiction over Plaintiff's Human Rights Law and City Law claims is conferred by 28 U.S.C. § 1367(a).

3. Venue is proper in this District under 28 U.S.C. §1391(b), as Defendant has resided and conducted business in the Southern District of New York at all times relevant hereto.

## PARTIES

4. Plaintiff TOSAN BOB OKOTIE resides at 17402 North Sienna Cove Lane, Houston, TX 77083. And his national origin is Nigeria.

5. Defendant Department of Homeless Services is a New York City agency headquartered at 33 Beaver Street New York, NY 1004.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about November 22nd, 2016, Plaintiff filed a Charge of Discrimination against the NYC Department of Homeless Services with the New York City Office of the Equal Employment Opportunity Commission ("EEOC"), Charge No. 520-2016-03757.  Plaintiff charged DHS with unlawful age discrimination, discrimination based on his national origin, and retaliation in connection with the terms, conditions, and privileges of his employment.

7. By notice dated June 8th, 2017  which he received on June 19th, 2017, the EEOC notified Plaintiff of his right to file a civil action against DHS.

8. This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's right-to-sue notice.

9. Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

**FACTS**

10. Plaintiff was born in Nigeria and is presently 61 years old.

11. Plaintiff was employed as a City Laborer assigned to the Fleet Services of the DHS by Defendant from July 13th, 2015 until August 5th, 2016.

12. Plaintiff was staffed at Defendant's Fleet Services department in Brooklyn. His primary duties consisted of riding with a designated driver and other laborers to locations throughout the city where Plaintiff and his -co-workers would physically move and transport the belongings of DHS clients from one living space to another.

13. Plaintiff was assigned to work under a supervisor named Larry Singleton.

14. Upon the first day that Plaintiff reported to Mr. Singleton, Mr. Singleton made a remark to Mr. Okotie, a man born and raised in Nigeria, that he must have been hired only as a favor to a Nigerian bureaucrat that worked within the offices of DHS at Beaver Street because Mr. Okotie was too old to work as a laborer in the fleet.

15. There were no other Nigerians without the DHS Fleet wherein Plaintiff worked nor any other Africans.

16. Plaintiff was the oldest worker within the DHS fleet laborer pool by the better part of a decade.

17. From July 13, 2015 until on or about December 2015, Defendant through their agent Larry Singleton, began a campaign to try to drive Mr. Okotie out of the Fleet laborer pool by routinely assigning Mr. Okotie the most difficult and exhausting assignments and frequently

providing him with less than the customary amount of support.  This campaign took a fevered pitched after December of 2015 into August of 2016 after Plaintiff complained of his treatment.

18.     Defendant regularly distributed moving assignments on the basis of relative difficulty amongst the fleet laborers so as to ensure that all laborers performed an even amount of each the easier and the more difficult moving assignments.  The difficulty of a moving assignment was measured by the distance between the dispatch center and the two moving locations, the distance between the moving locations themselves, the presence or absence of an elevator in either of the moving locations and the expected volume of furniture and belongings to be moved.

19.     Defendant, through Larry Singleton, routinely assigned Mr. Okotie the worst and most difficult job assignments on a daily basis – the most distant job sites, the move sites without an elevator, those with the most flights of stairs to traverse, the move sites with the most furniture and regularly assigned Plaintiff to work without adequate assistance from other laborers.

20.     It became a joke in fleet that anybody assigned to help on a job with Bob Okotie must have done something to irk Mr. Singleton because Bob Okotie exclusively had the worst assignments in the labor pool.

21.     In December of 2015, Mr. Okotie complained verbally to Mr. Singleton regarding the comically apparent lopsided distribution of job assignments that always placed Mr. Okotie in the hottest, tallest and most elevator-free jobs sites day in and day out.

22.     Mr. Singleton refused to address Mr. Okotie's complaint.

**23.**     Mr. Okotie registered a written complaint on or about January 14th, 2016 with a supervisor and director of the Defendants regarding the unfair and harassing treatment he received from the Defendants..

**24.**     It was the submission of that formal written complaint that initiated a heightened campaign of animosity towards Mr. Okotie that originated with Mr. Singleton and spread into the hearts and minds of the other Fleet laborers.

**25.**     Of course, Mr. Okotie continued to receive the worst job assignments of the day.

**26.**     He was often asked to perform moves without help that would customarily be provided to other laborers.

**27.**     For example, on March 7th, 2016, Mr. Okotie was forced to off-load single handed a vehicle full of beds while there were several other laborers free to assist and who would have normally been assigned to assist for a job of that size.

**28.**     Mr. Singleton began to selectively enforce an often ignored policy regarding laborer access to two types of fleet vehicles – van and tracks.

**29.**     Defendant allowed younger employees to freely use either vans or trucks when moving clients, yet routinely denied Plaintiff the ability to use the vans by selectively citing an often ignored policy regarding the use of vans by laborers.

**30.**     As a result, Plaintiff was forced to use trucks exclusively while other laborers were permitted to use vans at their leisure, the vans being more comfortable for laborers.

**31.**     On March 22nd, 2016 at about 5:28 P.M., Mr. Singleton all but admitted that he was engaged in a campaign of punishment against Mr. Okotie when he approached Mr. Okotie in an aggressive manner and stated "Mr. Okotie, as you continue to fuck-up, you will continue to suffer and you will see hell."

32. The most shocking instance of Mr. Singleton's animus arose on May 9th 2017 when Mr. Okotie, during the early evening, overheard Mr. Singleton suggest to a Fleet driver Mr. Bookman that Mr. Bookman should try to find a way to frighten My. Okotie on the job that day. Later that same day, Mr. Okotie was assigned to ride with Mr. Bookman, who served as the driver.  While Mr. Okotie was moving furniture from the back of the vehicle on a hard NYC street, Mr. Bookman inexplicably caused the vehicle to move forward and caused Mr. Okotie to drop the furniture while struggling to keep himself from having the furniture fall on him or to fall face first onto the pavement.

33. On May 25th, 2016, Mr. Singleton made fun of Mr. Okotie publicly, one of dozens of incidents, when he derisively called Mr. Okotie that "email writer", referencing the January 14, 2016 complaint which provoked laughter amoungst the other Fleet laborers that Mr. Singleton had turned against Mr. Okotie.

34. Mr. Okotie made oral and verbal complaints about these instances and received only hostility in return.

35. Mr. Okotie complained in writing to Ms. Lynn Astacio on several occasions about Mr. Singleton's conduct. However, these complaints were ignored and Mr. Singleton's version of events were accepted without investigation into the merits of Mr. Okotie's complaints, against agency policy.

36. Mr. Okotie complained to Denita Williams, a supervisor and manager with DHS as well but to no avail.

37. Mr. Singleton would routinely make impossible demands on Mr. Okotie and demand that he clock out of work earlier than other similarly situated laborers and then hold it against him if he did not.

38. Mr. Singleton continued to assign Mr. Okotie to work with Mr. Bookman despite the prior May 2016 incident where Mr. Bookman nearly injured Mr. Okotie in an effort to force Mr. Okotie to work in tense conditions.

39. Plaintiff's age and national origin were the original aspects that provoked Defendants through their agent Mr. Larry Singleton to persecute Mr. Okotie by burdening him with the most exhausting job assignments available and then it was the January 2016 complaint about this treatment that provoked Mr. Singleton to begin to build a hollow pretense for terminating Mr. Okotie on August 5th, 2016.

40. Defendants issued a series of disciplinary reports that were based on exaggerated and misrepresented conduct in an effort to create a false record justifying adverse employment action against Plaintiff.

41. On August of 2016, Defendants took adverse action regarding Plaintiff by firing him.

42. Plaintiff has suffered damage to his reputation and harm to his career. He has also experienced physical pain and suffering, mental anguish, and the loss of enjoyment of life's pleasures.

**FIRST CAUSE OF ACTION**
**(Violation of the ADEA)**

43. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

44. At all times relevant to this Complaint, Defendant was engaged in an industry affecting commerce as defined in § 11(h) of the ADEA, 29 U.S.C. § 630(h).

45. At all times relevant to this Complaint, Defendant has employed 20 or more employees for each working day in each of 20 or more calendar weeks in the preceding calendar

year. Defendant was and is, therefore, an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. § 630(b).

46. Defendant intentionally discriminated against Plaintiff by subjecting him to disparate treatment on account of his age and by denying him the more favorable compensation, terms, conditions, and privileges of employment enjoyed by similarly-situated employees who are substantially younger than Plaintiff.

47. Defendant intentionally discriminated and retaliated against Plaintiff on the basis of his opposition to unlawful employment practices and on account of his age.

48. Defendant acted willfully and in reckless disregard of Plaintiff's rights.

49. Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the New York State Human Rights Law)

50. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

51. Defendant is an employer within the meaning of the New York State Human Rights Law.

52. Defendant's acts and omissions constitute age discrimination and retaliation in violation of the New York State Human Rights Law.

53. Plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the New York City Human Rights Law)

54. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

**55.** Defendant is an employer within the meaning of the New York City Human Rights Law.

**56.** Defendant's acts and omissions constitute age discrimination and retaliation in violation of the City Law.

**57.** Plaintiff has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

58. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

59. By its conduct alleged above, DHS discriminated against Plaintiff on the basis of race, religion, color, and national origin, and retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of 42 U.S.C. §§ 2000e et seq. DHS's conduct was intentional and in deliberate disregard of Plaintiff rights.

60. Plaintiff has been damaged by DHS's wrongful conduct.

## FIFTH CAUSE OF ACTION
## Civil Rights Act of 1866, 42 U.S.C. § 1981

61. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

62. By its conduct alleged above, DHS discriminated against Plaintiff on the basis of race, color, or both, and retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of 42 U.S.C. § 1981.

63. Defendant's conduct was intentional and in deliberate disregard of Plaintiff's rights.

64. Plaintiff has been damaged by DHS' wrongful conduct.

## SIXTH CAUSE OF ACTION
## New York Executive Law, §§ 291 *et seq.*

**65.** Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

66. By its conduct alleged above, DHS discriminated against Plaintiff on the basis of race, religion, color, and national origin and retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of New York Executive Law §§ 291 et seq.

67. DHS's conduct was intentional and in deliberate disregard of Plaintiff's rights.

68. Plaintiff has been damaged by DHS's wrongful conduct.

### SEVENTH CAUSE OF ACTION
### New York City Human Rights Law, N.Y.C.A.C. §§ 8-101 et seq.

69. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

70. By its conduct alleged above, DHS discriminated against Plaintiff on the basis of race, religion, color, and national origin and retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of New York City Human Rights Law §§ 8-101 et seq.

71. DHS's conduct was intentional and in deliberate disregard of Plaintiff's rights.

72. Plaintiff has been damaged by DHS's wrongful conduct.

### EIGHTH CAUSE OF ACTION
### New York City Human Rights Law – Retaliation

73. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

74. By its conduct alleged above, DHS retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of New York City Human Rights Law.

75. DHS's conduct was intentional and in deliberate disregard of Plaintiff's rights.

76. Plaintiff has been damaged by DHS's wrongful conduct.

### NINTH CAUSE OF ACTION
### New York Executive Law

77. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

78. By its conduct alleged above, DHS retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of New York State Executive Law.

79. DHS's conduct was intentional and in deliberate disregard of Plaintiff's rights.

80. Plaintiff has been damaged by DHS's wrongful conduct.

### TENTH CAUSE OF ACTION
### ADEA – Retaliation

81. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

82. By its conduct alleged above, DHS retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of the ADEA.

83. DHS's conduct was intentional and in deliberate disregard of Plaintiff's rights.

84. Plaintiff has been damaged by DHS's wrongful conduct.

### ELEVENTH CAUSE OF ACTION
### Title VII – Retaliation

85. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

86. By its conduct alleged above, DHS retaliated against Plaintiff for opposing the discrimination and harassment by DHS, in violation of the Title VI.

87. DHS's conduct was intentional and in deliberate disregard of Plaintiff's rights.

88. Plaintiff has been damaged by DHS's wrongful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in his favor and against Defendant, and to provide the following relief:

A. Back pay with prejudgment interest and all the fringe benefits to which he is entitled;

B.  Front pay and benefits to the extent reinstatement is not possible;

C.  Compensatory damages for his non-economic injuries in an amount to be determined at trial;

D.  Punitive damages to punish and deter Defendant from future acts of employment discrimination in an amount to be determined at trial;

E.  Liquidated damages in an amount equal to twice Plaintiff's backpay losses;

F.  An award of reasonable attorneys fees and costs to compensate Plaintiff for having to prosecute this action against Defendant; and

G.  Such other and future relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.

Dated: New York, New York
September 6th, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

/s/ Michael Faillace
Michael Faillace [MF-8436]
60 E. 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*